Osvaldo Morales, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Pablo J. Santiago Lavandero, Judge, Respondent; Pan American Plastics, Inc., Intervener.

No. 2400.   Decided December 12, 1961.

*Domingo Candelario* and *Manuel Janer Mendía* for petitioner and the Department of Labor. *Fiddler, González, Faure & Guillemard* (*R. Negrón & Rodríguez, Richard González,* on the brief) for intervener.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Osvaldo Morales rendered services to the Pan American Plastics, Inc., whose activities are covered by the Federal Fair Labor Standards Act, for the period comprised between November 1, 1951 and January 15, 1953, earning a monthly salary of $175, until June 30, 1952, and of $200 from said date up to the termination of his employment. The labor contract specifically stated that the aforesaid salary only covered a period of forty hours per week, and that each additional hour would be paid at double compensation. The complainant claimed payment for sixteen extra hours per week, since he rendered services for eight hours during each of the seven days of the week.

On appeal the superior court rendered judgment in favor of the complainant, granting him the sum of $1,280, which

represents the overtime worked at double compensation as agreed in the labor contract. However, since it concluded that the claimant was an executive, it eliminated the additional sum which by way of penalty the district court had included in its judgment.

At plaintiff's request we granted a writ of certiorari to review the judgment rendered by the superior court on appeal from the district court in this action regarding claim for wages. *Sierra v. Pizá, Inc.*, 82 P.R.R. 294 (1961); *Hull Dobbs Company of P.R.* v. *Superior Court*, 82 P.R.R. 73 (1961); *Borinquen Furniture* v. *District Court; Umpierre, Int.*, 78 P.R.R. 858 (1956). The only question raised is the challenge made against the trial court in finding that the complainant was an executive.

■ As we pointed out in *Piñán* v. *Mayagüez Sugar Co.*, *ante*, p. 86, from the 15th of January 1952 the determination of whether or not the complainant was an executive depends on the concurrence of the requisites enumerated in the regulations approved by the Secretary of Labor and promulgated on December 26, 1951 to define said term for the purposes of the exclusion established by § 19 of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254, 29 L.P.R.A. § 288)[1] which reads:

"(A) Any employee (1) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof; and

(2) who customarily and regularly directs the work of two or more other employees therein; or of a department or subdivision thereof; and

[1] Although in Art. V reference is made to "repeal," this regulation was revised by another regulation promulgated December 17, 1959, effective January 15, 1960. The main alterations consisted in: (a) excluding from the definition of executive those employees whose services are covered by the Federal Fair Labor Standards Act of 1938, which shall be governed during the time this occurs, by the provisions of the Federal Regulation of November 18, 1958, 29 C.F.R. § 541.1, Supp. 1961, p. 315; and (b) as to the requisite on compensation of paragraph (VI) of subpart (A), in providing he shall he "compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to the weekly salary

(3) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given special attention; and

(4) who customarily and regularly exercises discretionary powers; and

(5) who does not devote over 20% of his workweek to activities not directly or intimately related to the performance of the work described in paragraph (A), Subsections (1) to (4) of this Article; *Provided,* that this Subsection (5) shall not apply in the case of an employee who is in the sole charge of an independent establishment or a physically separated branch establishment; or when he owns at least 20% interest of the enterprise he works for; and

(6) who is compensated for his services on a fixed basis (by day, week, fortnightly or longer periods) equivalent to a weekly salary of not less than $30 exclusive of board, lodging, or other facilities; or

(B) Any employee (1) whose work complies with the requirements of Paragraph (A), Subsections (1) and (2) of this Article; and

(2) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods) equivalent to a weekly salary of not less than $100, exclusive of board, lodging, or other facilities."

For the period of time prior to January 15, 1952 covered by the complaint, in the absence of an administrative statement on that score, we shall consider all the facts relevant to the nature and functions of the employment. It is necessary, then, to make reference to the findings of fact on these points.

---

which results from multiplying by 60 the highest minimum rate per hour applicable by a law of the Commonwealth of Puerto Rico or by a mandatory decree of the Minimum Wage Board of Puerto Rico to the activities in connection with which he performs his duties as an executive, exclusive of board, lodging, or other facilities; *Provided,* however, that the weekly salary shall never be less than 35 dollars when said compensation computed in the manner already mentioned would result in less than this amount."

There is a marked conflict between the findings of fact of the district court and those formulated by the superior court on appeal. The district court determined that the complainant was a "foreman"; that "to each foreman was assigned the supervision of a small group of 8 or 9 workers, the care of the machinery in his charge, including minor repairs thereon, and the operation of certain control mechanisms on said machinery"; that "the complainant lacked the authority to hire or discharge employees and it was not among his duties to suggest or recommend the employment or discharge of other employees, or the advancement and promotion or any other transfer"; that "the complainant, besides not having the aforesaid powers by reason of his office, as a matter of fact, never exercised an authority similar to any of those previously mentioned, nor was any suggestion or recommendation of his as to the employment, advancement, promotion, or transfer of any employee ever taken into consideration"; and that "the complainant did not customarily and regularly exercised discretionary powers in his work."[2]

[2] The district court found besides that the complainant divided his time more or less equally between the supervision of the group of 8 or 9 workers, and the care of the machinery, including the performance of minor repairs thereon; that "although the work of supervision of the foreman was limited to the small group that was assigned to him, the task of the workers in the factory was not segmented, rather they all fulfilled a similar task in an integrated way, although for the purpose of simplifying and making more effective the task of the foremen at the factory, a number of workers was assigned to each foreman from the general group of workers, to be supervised by him in each shift, since there were more than one work shifts a day and the workers and foremen would be rotated"; that "these groups of workers who were placed under the supervision of each foreman lacked functional independence and in no way did they function as cells or units which would justify cataloguing them as subdivisions or departments of the enterprise."

We have closely examined the statement of the case prepared by the district judge for the purposes of the appeal taken and viewed in the light most favorable to the complainant the afore-mentioned findings are not supported by the evidence. The complainant's own testimony, the sole proof offered to support his claim, was summarized as follows:

"1. OSVALDO RIVERA MORALES—is petitioner in this case. He began working in the defendant company on Mr. McLaughlin's instruc-

In the findings of fact of the superior court it was held that "the complainant was employed as foreman in defendant's factory, and among his duties therein he was in charge of watching over and directing the employees in the production department thereof, who worked under his immediate control during his shift; of seeing that all went well and that the machines were functioning properly; his recommendations as to his subordinates were taken into consideration, and exercised in general other duties which marked him as an executive in the common and ordinary sense of the word."

It is clear that regarding the complainant's power to make recommendations for appointment, promotion, or dismissal of the employees, and the weight and consideration given to these recommendations by the company, is one of the facts on which contradictory evidence was presented before the district court, for while the complainant testified he had no such power, the respondent's testimony tended to es-

tions. He testified that the latter told him to start working at $175 monthly, at the rate of 8 hours per day, that is, 40 hours weekly. He maintains that Mr. McLaughlin was the manager of the plant, that is, the general manager of the defendant company. He states that the latter told him that after the plant began to yield, he would be compensated for the extra hours. He says he was never paid for those extra hours, rather the amount he offered to pay him. He maintains that from November 1951 until June 1952 he earned $175 monthly, but that in July he earned $200; that his duties were to watch over the production machines and if there was any damage he was in charge of repairing it, and if the damage was too great, he had to summon the machinery supervisor; that he had 8 workers under his supervision; that these workers were in charge of operating the presses; that he was watchful of what these workers did, but that the workers were selected by McLaughlin and Harman; that they also dismissed them, and that he had no inference [sic] in the discharge or hiring of said workers, but that he supervised their work. He states that each worker knew which machine he was supposed to work and operate; that he never changed a machine. He also testifies that he never changed a worker from one machine to another; that if a worker was taken ill, Mr. Harman would send a substitue; that if a worker became ill during the nighttime, the press would be stopped."

As may be noted, not even by a long stretch of the imagination, can the preceding findings be upheld on the basis of this testimony. The other witnesses who testified were witnesses of the respondent, who did not testify on the matter indicated.

tablish that his recommendations were of considerable weight. The conflict in the oral testimony was settled in favor of the complainant by the district court, which saw and heard the witnesses testify and observed their conduct while giving testimony. Unless it was a matter of manifest error, the superior court on appeal could not have arbitrarily discarded these findings of fact, nor ignored the other findings derived from the weighing of the evidence made by the district court. Upon considering on appeal the judgments rendered by the district court, the superior court is subject to the same limitations that this Court has traditionally imposed on itself with respect to the weighing of oral testimony made by the trial court. Its primary function is to determine whether the findings are sufficiently supported by the evidence introduced and whether they represent the most rational weighing of the same, and in the absence of passion, prejudice or partiality, or manifest error (see *Sanabria* v. *Heirs of González*, 82 P.R.R. 851, 965 (1961)) they should be accepted.[3] Rule 43.1 of the Rules of Civil Procedure of 1958; *De la Fuente* v. *A. Roig Sucrs.*, 82 P.R.R. 499 (1961); *Ramírez* v. *Ramírez*, 80 P.R.R. 501 (1958); *Freytes* v. *Municipality*, 80 P.R.R. 505 (1958); *Géigel* v. *Ramos*, 79 P.R.R. 812 (1957); *Luperena* v. *P. R. Transportation Authority*, 79 P.R.R. 438 (1956). Therefore, for our present purposes, we shall take into consideration those findings of fact of the district court which are supported by the evidence as it appears in the statement of the case, and which we have previously copied in this opinion.

---

[3] This rule does not apply when the findings of fact are based on documentary evidence: in general, *Wolff* v. *Hernández*, 76 P.R.R. 608 (1954); deposals or written reports, *Castro* v. *Meléndez*, 82 P.R.R. 556 (1961); written stipulation of facts, *Cruz* v. *Water Resources Authority*, 76 P.R.R. 291 (1954); *Luce & Co.* v. *Cianchini*, 76 P.R.R. 155 (1954); transcription of evidence, *Rivera* v. *Great American Indemnity Co.*, 73 P.R.R. 223 (1952). See, also, *Feliciano* v. *Sundem*, 78 P.R.R. 1 (1955); *Nogueras* v. *Muñoz*, 67 P.R.R. 413 (1947); *International General Electric* v. *Colón*, 62 P.R.R. 550 (1943).

■■ These findings having been considered, it is not possible to hold that Morales was an executive. His duties in no way required him to exercise his discretion; he did not personally hire or discharge any worker; his primary task consisted in making sure that the eight workers under his charge would do the work assigned to them; his suggestions on promotion or transfers of any of the employees were not taken into consideration. This being so, and irrespective of the validity of the afore-mentioned regulations, and hence, of the application of the requirements provided therein, we hold that the complainant was not an executive. See *Piñán* v. *Mayagüez Sugar Co., supra; Sierra* v. *Mario Mercado e Hijos,* 81 P.R.R. 305 (1959). We find it unnecessary to consider the correctness of the conclusions of law on the nullity of said regulations, because the Secretary of Labor did not have the express power to do so, according to the trial court. See *Sierra* v. *Mario Mercado e Hijos,* 81 P.R.R. 305, 312, 314 (1959). Since the employee concerned was not an executive, the trial court erred in eliminating the additional sum which by way of penalty the district court had granted. *Berríos* v. *Eastern Sugar Associates,* 79 P.R.R. 647 (1956); *Encarnación* v. *Jordán,* 78 P.R.R. 481 (1955); *Acosta* v. *Floor Coverings Co.,* 78 P.R.R. 467 (1955).[4]

The judgment rendered by the Superior Court, San Juan Part, on September 27, 1957, is modified in the sense of including a pronouncement ordering the respondent to pay the petitioner an additional sum of $1,280 by way of additional compensation or penalty, and as thus modified, it will be affirmed.

---

[*] Since the enactment of Act No. 96 of June 26, 1956 (Sess. Laws, p. 622) the imposition of the penalty is mandatory in every claim formulated by a worker or employee on the ground that he received compensation lower than that prescribed (a) in the Minimum Wage Act; (b) by virtue of a mandatory decree, order or regulation of said Board; (c) in a collective agreement; or (d) in an individual labor contract. See § 30 of the above-mentioned Act, 29 L.P.R.A. § 246b(a).